UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MELISSA A. KANE, | ) | CASE NO.1:10CV1874 |
| | ) | |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | OPINION AND ORDER |
| | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY | ) | |
| | ) | |
| DEFENDANT. | ) | |

This matter is before the Court on the objections to the Magistrate Judge's Report and Recommendation filed by Defendant Commissioner of Social Security (Defendant or the Commissioner) (Doc. No. 19), and the objections filed by Plaintiff Melissa A. Kane (Plaintiff). (Doc. No. 20.) The Magistrate Judge submitted her Report and Recommendation (Report) (Doc. No. 18) recommending that this Court remand the final decision of the Commissioner denying Plaintiff's claim for disability benefits (DIB), under 42 U.S.C. §§ 416, 423, and supplemental security income benefits (SSI), under 42 U.S.C. § 1381 *et seq.*, for further proceedings.

Upon *de novo* review of those portions of the Report to which the parties have made objection, this Court ADOPTS the Report, in part, VACATES the final decision of the Commissioner, and REMANDS the matter with instructions as set forth below.

This Court's review of the Report is governed by 28 U.S.C. § 636(b), which requires a *de novo* review as to those portions of the document to which objection is made. Because the Commissioner and Plaintiff objected only to certain portions of the Report, the remainder of the Report—including its account of the factual and procedural history of the case—is, except as otherwise noted, hereby accepted as written.

Review of the ALJ's determination, in turn, is limited to determining whether the findings are supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such 'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence is 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *McGlothin v. Comm'r of Soc. Sec.*, 299 Fed. Appx. 516, 521 (6th Cir. 2008) (quoting *Rogers v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2007) (internal citation omitted)).

If substantial evidence supports the ALJ's finding of non-disability, that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). However, even when there is substantial evidence, "a 'decision of the Commissioner will not be upheld where the [Social Security Administration] (SSA) fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'"

*Rabbers v. Comm'r of Soc. Sec. Admin.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)). *See Wilson v. Comm. of Soc. Sec.*, 378 F.3d 541, 544-546 (6th Cir. 2004) (finding it was not harmless error for the ALJ to fail to make sufficiently clear why he rejected the treating physician's opinion, even if substantial evidence not mentioned by the ALJ may have existed to support the ultimate decision to reject the treating physician's opinion).

Under the Social Security Act, a disability renders the claimant unable to engage in substantial gainful activity because of a medically determinable physical or mental impairment that can result in death or that can last at least twelve months. 20 C.F.R. § 404.1505(a). Consideration of disability claims follows the familiar five step review process. 20 C.F.R. § 404.1520(a)(4). The burden of proof is on the claimant through the first four steps; the burden shifts then to the Commissioner in step five. However, the claimant bears the ultimate burden of proving that he or she is entitled to disability benefits. 20 C.F.R. § 404.1512(a).

**Background**

Plaintiff filed for DIB and SSI benefits on February 1, 2005, alleging that her disability began on January 2, 2003. Her application was denied initially and upon reconsideration. Plaintiff subsequently sought a review before the Administrative Law Judge, and a hearing took place on March 26, 2008.

In a decision issued on April 18, 2008, the ALJ determined that Plaintiff had the following severe impairments: a mental impairment and bilateral carpal tunnel syndromes. (TR 32.) He noted that Plaintiff's mental impairment had been diagnosed

variously as attention deficit hyperactivity disorder, bipolar disorder, anxiety-related disorder, and obsessive-compulsive disorder. Nonetheless, the ALJ found that Plaintiff's impairments did not meet the enumerated impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (TR 33.) He also determined that Plaintiff had the residual functional capacity to perform a range light duty work. (TR 34-37.)

Based upon these findings, the ALJ concluded that Plaintiff was not disabled at any time during the relevant insurance period. (TR 39.) In reaching this conclusion, the ALJ reviewed the opinions offered by various physicians, and afforded the opinion of the State agency psychological consultant greater weight than that of Dr. Byong J. Ahn, one of Plaintiff's proffered "treating physicians," finding that Dr. Ahn's determination that Plaintiff had a Global Assessment of Functioning score of 45 and repeated episodes of decompensation was not supported by the record. (TR 37.) On June 22, 2010, the ALJ's decision was adopted by the Commissioner as the final decision of the Commission. (TR 4-6.)

In her Report, the Magistrate Judge rejected Plaintiff's argument that the ALJ failed to give sufficient weight to the opinion of Dr. Ahn, finding that the doctor did not meet the definition of a treating physician under 20 C.F.R. § 404.1527. (Report at 16-17.) She also concluded, however, that the ALJ erred by relying on the wrong portion of Dr. Catherine Flynn's Mental Residual Functional Capacity Assessment. (Form SSA 4734-F4 SUP; *see* TR 253-256.) The Magistrate Judge reasoned that because the ALJ relied on the "Summary Conclusions," contained in Section I, instead of the "Functional Capacity Assessment," contained in Section III, his determination as to Plaintiff's Mental

4

RFC was faulty and not subject to meaningful review. She also found the ALJ failed to make the required finding on the record as to Plaintiff's ability to perform work in "an ordinary work setting" under SSR 96-8p. She recommended that the final decision of the Commissioner, adopting the decision of the ALJ, be remanded for further consideration of these issues. (Report at 20-21.)

**Discussion**

*The Commissioner's Objections*

In his first objection, the Commissioner argues that a remand is not necessary for further consideration of Dr. Flynn's RFC assessment. While the Commissioner does not seriously challenge the Magistrate Judge's finding that the ALJ referred only to the summary conclusions in Section I of Dr. Flynn's Mental Residual Functional Capacity Assessment,[1] he insists that that the error is harmless because the restrictions identified in Section I and the conclusions in Section III contained essentially the same restrictions.

Section 1 of the Mental Residual Functional Capacity Assessment form is entitled "Summary Conclusions" and contains twenty mental functions grouped under four main categories. According to the Social Security Administration Program Operation Manual System (POMS), "Section I is merely a worksheet to aid in deciding

---

[1] In finding that Plaintiff had residual functional capacity to perform light work, the ALJ relied upon the mental limitations identified by Dr. Flynn in Section I as "moderate," including: maintain[ing] attention and concentration for extended periods, perform[ing] activities within a schedule, maintain[ing] regular attendance, and be punctual within customary tolerances; complet[ing] a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; interact[ing] appropriately with the general public; and respond[ing] appropriately to changes in the work setting." (TR 34-35.)

5

the presence and degree of functional limitations and the adequacy of documentation and does not constitute the RFC assessment." POMS § DI 24510.060. After completing the worksheet in Section I, the consultant is to provide his mental RFC assessment in narrative format in Section III of the form. According to the POMS, it is in Section III that the "actual mental RFC assessment is recorded, explaining the conclusions indicated in section I, in terms of the extent to which these mental capacities or functions could or could not be performed in work settings." POMS § DI 24510.060.

Because the actual assessment is contained in Section III, courts have consistently held that it is not error for an ALJ to omit restrictions identified in Section I in his RFC analysis. *See Joiakim v. Comm'r*, 2011 U.S. Dist. LEXIS 31372, at \*17-\*18 (E.D. Mich. Mar. 8, 2011), adopted by 2011 U.S. Dist. LEXIS 31892 (E.D. Mich. Mar. 25, 2011); *Coleman v. Astrue*, 2010 U.S. Dist. LEXIS 126247, at \*19-\*20 (N.D. Ohio Nov. 18, 2010), adopted by *Coleman v. Comm'r of Soc. Sec.*, 2010 U.S. Dist. LEXIS 126278 (N.D. Ohio Nov. 30, 2010); *Kachik v. Astrue*, 2010 U.S. Dist. LEXIS 101333, at \*16-\*17 (W.D. Pa. Sept. 27, 2010); *Velez v. Comm'r of Soc. Sec.*, 2010 U.S. Dist. LEXIS 36119, at \*18 (N.D. Ohio Mar. 26, 2010) ("[T]he ALJ is not required to include the findings in Section I in formulating residual functional capacity."), adopted by 2010 U.S. Dist. LEXIS 36118 (N.D. Ohio Apr. 13, 2010); *Berry v. Astrue*, 2009 U.S. Dist. LEXIS 751, at \*45 (W.D. Va. Jan. 7, 2009).

Plaintiff did not, however, complain that the ALJ failed to consider restrictions contained in Section I of a physician's Mental Residual Functional Capacity Assessment form. Instead, she argued that the ALJ erred in relying on the restrictions

6

contained in Section I of Dr. Flynn's form, rather than the assessment, itself, which was contained in Section III. The Court agrees with the Magistrate Judge that the ALJ's reliance on Section I was erroneous, and further rejects the Commissioner's suggestion that the error was harmless.

There are notable differences between Section I and Section III of Dr. Flynn's form. For example, while Section I indicates that Plaintiff is not significantly limited in her "ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes," Section III only goes so far as to note that Plaintiff "can interact occasionally in situations that do not require resolving conflict or persuading others to follow demands." (TR 254-55.) Likewise, other subtle differences exist between the categories identified by Dr. Flynn as limitations and her actual analysis of those limitations. While Section I assessed a moderate limitation in "the ability to respond appropriately to changes in the work setting," the Section III assessment qualifies and expounds on that limitation by noting that Plaintiff "can cope with the ordinary and routine changes in a work setting that is not fast paced or of high demand." (*Id.*)

While the differences between Section I and Section III of Dr. Flynn's Mental Residual Functional Capacity Assessment are not glaring, the two sections vary enough that the Court is concerned that the ALJ's failure to consider the only portion of the form that actually contains Dr. Flynn's assessment makes a meaningful review of the ALJ's decision impossible. For these reasons, the Court OVERRULES the Commissioner's first objection.

In his second objection, the Commissioner challenges the Magistrate Judge's determination that the ALJ erred by failing to make an appropriate determination as to whether Plaintiff could perform sustained work activity on a regular and continuous basis consistent with SSR 96-8p. In finding error, the Magistrate Judge appears to have relied, in part, on the fact that the Vocational Expert's data that sufficient jobs were available in the workplace for a worker with Plaintiff's limitations came from a source that did not distinguish between full and part-time work.[2]

In step 1 of the five step analysis that ALJs must perform, the ALJ is to determine whether the claimant was working at the time of the applications and, if so, whether the work constituted "substantial gainful activity." SGA is work that is both substantial and gainful as defined by the agency in its regulations. Substantial work activity is "work activity that involves doing significant physical or mental activities." According to the Administration, a claimant's work "may be substantial even if is done on a part-time basis or if [the claimant] do[es] less, get[s] paid less, or [has] less responsibility than when [he or she] worked before." 20 C.F.R. § 404.1572(a). Gainful work activity is work activity done for "pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b).

A different analysis is required at step 5. There, the ALJ must determine whether, even if a claimant's impairment prevents her from doing her past relevant work, other work exists in the national economy that plaintiff can perform. The determination

---

[2] Specifically, the VE relied on census data for the second quarter 2007, published by the Bureau of Labor Market Information and the Ohio Department of Job and Family Services.

of whether such jobs exist depends, in part, on the ALJ's determination of the claimant's RFC. *See DeRossett v. Astrue*, 2009 U.S. Dist. LEXIS 108841, at *14 (E.D. Ky. Nov. 20, 2009). Social Security Ruling (SSR) 96-8p defines RFC as:

> an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule. SSR 96-8p, 1996 LEXIS 5. When assessing the RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, 5 days a week, or an equivalent schedule), and describe the maximum amount of each work-related activity the individual can perform on the evidence available in the record.

Based on this definition, it is clear that SSR 96-8p is only relevant to step five of the sequential process because "it relates to the ALJ's determination of RFC which is used to determine whether an individual is capable of performing other work […]." *DeRossett*, 2009 U.S. Dist. LEXIS 108841, at *14.

Here, the ALJ properly considered Plaintiff's part-time work at step 1 to determine whether Plaintiff had engaged in substantial gainful activity. At step 5, the ALJ asked the VE if there were sufficient jobs in the economy for which a hypothetical employee with Plaintiff's limitations could perform. In answering the question in the affirmative, the VE relied upon U.S. census data. The VE acknowledged that this data did not distinguish between part-time and full-time jobs. (TR 347.)

In his objection, the Commissioner argues that the regulations recognize that census bureau data is a reliable source upon which the agency may rely. 20 C.F.R. § 404.1566(d) ("We will take administrative notice of reliable job information available from various governmental and other publications," including "[…] Cenus Reports […]."

The Commissioner also relies upon *Davis v. Sec'y of Health & Human Servs.*, 915 F.2d 186, 189 (6th Cir. 1990) .

The Commissioner's reliance on *Davis* is misplaced. *Davis* was decided six years before SSR 96-8p was passed, and was abrogated by SSR 96-8p. *See DeRossette*, 2009 U.S. Dist. LEXIS 108841, at *14 (distinguishing *Davis* and noting that, [p]rior to SSR 96-8p, 1996 SSR LEXIS 5, the Sixth Circuit had frequently recognized that part-time work was regarded as 'substantial work activity,' so that the ALJ was not required to find that a claimant had the ability to work full time"). Likewise, the mere fact that the agency takes administrative notice of a particular data source does not mean that the source satisfies the step-five burden of production with respect to a claimant's ability to work on a "regular and continuing basis." Because there is at least some evidence that Plaintiff would have difficulty completing a normal workday and workweek (TR 253-255), the Court agrees with the Magistrate Judge that the ALJ's failure to make a determination as to Plaintiff's capacity for full-time work was not harmless. *Compare DeRossette*, 2009 U.S. Dist. LEXIS 108841, at *15 (rejecting the argument that the ALJ should have asked whether the VE's data was referring to part-time or full-time work, noting that "[n]one of the medical evidence in this case demonstrates that Plaintiff would be limited to part-time work"). As such, the Commissioner's second objection is OVERRULED.

*Plaintiff's Objections*

Plaintiff takes issue with the Magistrate Judge's determination that Dr. Ahn was not a "treating physician' under the Act. Documents before the ALJ

10

demonstrate that Dr. Ahn saw Plaintiff five times over a six month period in 2005.[3] (TR 297-302.) Though it is not clear from the record, it appears that Plaintiff was referred to Dr. Ahn by her "family doctor" for the purpose of managing her medications.[4] (TR 301.) After the initial 45 minute visit in January, 2005, the follow-up visits lasted between 9 and 15 minutes. (TR 297-302.) At the conclusion of the initial visit, and after Dr. Ahn performed a mental health examination, Dr. Ahn proposed a number of "possible" diagnoses, including "possible major depression, recurrent type, bipolar affective disorders, OCD with anxiety, and adult ADHD." (TR 302.) In subsequent visits, Dr. Ahn adjusted Plaintiff's medication based upon Plaintiff's complaints and reports of side effects. No tests were performed, and no other action was taken. (TR 297-300.)

The regulations define a treating physician as a physician who has provided medical treatment or evaluation and "who has, or has had, an ongoing treatment relationship with" the claimant. 20 C.F.R. § 404.1502. On the other hand, a non-treating physician is "a physician, psychologist, or other acceptable medical source who has examined [the claimant] but does not have, or did not have, an ongoing treatment relationship with [the claimant]." *Id.*

"The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a person but once, or who has only seen the claimant's medical

---

[3] The Magistrate Judge indicates that Plaintiff saw Dr. Ahn four times, however, the Court identified physician notes from five visits in the record. A possible sixth visit in April, 2005, is referenced, but there is no documentation from that visit. (*Id.*)
[4] To be sure, it is clear that Dr. Ahn's "treatment" was limited to managing Plaintiff's medication.

11

records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). *See Kornecky v. Comm'r of Soc. Sec.,* 167 Fed. Appx. 496, 506 (6th Cir. 2006). "A single visit to a doctor is insufficient to establish a treating physician relationship and, indeed, depending on the circumstances, sometimes three to five visits will be insufficient." *Bowman v. Astrue*, 2009 U.S. Dist. LEXIS 32385, at *22 (S.D. Ohio Apr. 16, 2009) (citing *Luteyn v. Comm'r of Soc. Sec.*, 528 F. Supp. 2d 739, 743 (W.D. Mich. 2007) (collecting cases)).

These few brief visits, occurring over a short period of time, fail to demonstrate an "ongoing treatment relationship" necessary to establish a medical source as a "treating physician." *See Kornecky*, 167 Fed. Appx. at 506 (quoting 20 C.F.R. § 404.1502)). *See also Sites v. Astrue*, 2010 U.S. Dist. LEXIS 97442, at *74-*75 (N.D. W. Va. Aug. 4, 2010) (finding examining psychiatrist was not a treating physician where doctor had seen the claimant for one examination and two 15-minute mediation management appointments over a period of five months), adopted by *Sites v. Comm'r of Soc. Sec.*, 2010 U.S. Dist. LEXIS 92484 (N.D. W. Va. Sept. 3, 2010). *See, generally, Baety v. Barnhart,* 512 F. Supp. 2d 881, 890 (W.D. Tenn. 2007) (Four visits over seven months (three of which lasting 25 minutes or less) did not "establish the longitudinal perspective of the claimant's impairments," and the physician's opinion was entitled to little deference.) This is especially true, given the fact that there is no evidence that Dr. Ahn performed any tests that no other doctor had performed, and, in fact, performed no "tests" beyond the initial examination. *Compare Cronon v. Barnhart*, 244 F. Supp. 2d 1286, 1293 n.21 (N.D. Ala. 2003) (holding that seeing claimant three times and conducting tests that no other doctor conducted qualified doctor as treating source);

12

*Poplardo v. Astrue*, 2008 U.S. Dist. LEXIS 627, at \*30-\*31 (M.D. Fla. Jan. 4, 2008) (finding that doctor was a treating source for claimant where doctor saw claimant in more than four visits and over four months conducted extensive tests).

In her objection, Plaintiff complains that the Magistrate Judge provided "post hoc rationalizations" regarding the ALJ's treatment of Dr. Ahn's opinions. However, because Dr. Ahn's opinions were not required to be considered in the same light as the opinions of treating physicians, the ALJ, in turn, was under no compulsion to provide "good reasons" for discounting them. *See Stigall v. Astrue*, 2011 U.S. Dist. LEXIS 2639, at \*14 (E.D. Ky. Jan. 10, 2011); *Goins v. Astrue*, 2009 U.S. Dist. LEXIS 121743, at \*9 (N.D. Ohio Nov. 20, 2009) (adopted by *Goins v. Comm'r of Soc. Sec.*, 2010 U.S. Dist. LEXIS 98 (N.D. Ohio Jan. 4, 2010).) The fact that the ALJ may have referred to Dr. Ahn as a "treating physician" does not change the fact that his opinions were not entitled to treatment as opinions from a treating physician under the agency's regulations.[5]

In fact, the Court questions whether Dr. Ahn's summary of his mental status examination, and his subsequent treatment notes, constitute "medical opinions" under the regulations.[6] While the summary from Dr. Ahn's January, 2005 examination of Plaintiff provides "possible diagnosis," these are merely conclusory allegations as the

---

[5] Because the Court finds that Dr. Ahn was not a "treating physician," it does not reach (or adopt) the Magistrate Judge's finding that the ALJ provided "good reasons" for giving less weight to Dr. Ahn's opinions, as required when a treating physician's opinion is not given controlling weight. *See* 20 C.F.R. § 404.1527(d)(2).

[6] Section 1527(a)(2) defines "medical opinions" as: "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairments(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions. 20 C.F.R. § 1527(a)(2),

summary fails to address the severity of Plaintiff's limitations and provides no explanation as to how the diagnosis was reached. *See West v. Astrue*, 2011 U.S. Dist. LEXIS 20784, at \*24 (E.D. Tenn. Jan. 19, 2011) (opinions as to diagnosis did not represent "medical opinions" as they did reflect a judgment as to the nature and severity of the claimant's impairments"), accepted by 2011 U.S. Dist. LEXIS 21057 (E.D. Tenn. Mar. 2, 2011).

The treatment notes from the follow-up visits are even more sketchy as they do not even contain a diagnosis, and do not discuss what Plaintiff can do despite her impairments, or discuss any mental restrictions. "Accordingly, the treatment notes do not fit within the definition of a 'medical opinion,'" and the ALJ was not required to treat them as medical opinions from a treating physician. *See Modesitt v. Astrue*, 2010 U.S. Dist. LEXIS 99881, at \*24 (C.D. Ca. Sept. 21, 2010) (A doctor's "treatment notes, while providing a diagnosis[…] do not mention what Plaintiff can do despite her impairments or contain any consequent mental restrictions.") Thus, for all of these reasons, Plaintiff's first objection is OVERRULED.

Of course, even if the summary of the initial examination did satisfy the requirement of a medical opinion under the regulations, it would not be entitled to treatment as the medical opinion of a "treating physician" because it was rendered immediately after Plaintiff's first visit to Dr. Ahn. For purposes of the "treating physician rule," "[t]he question is whether [the physician] had the ongoing relationship with [the claimant] to qualify as a treating physician *at the time he rendered his opinion*."

14

*Kornecky*, 167 Fed. Appx. at 506 (emphasis in original). Clearly, Dr. Ahn did not have an ongoing relationship with Plaintiff at the time of her first visit.

In her second objection, Plaintiff complains that the Magistrate Judge erred in finding that when Plaintiff's date last insured was calculated as December 31, 2007, her post-2006 earnings were not considered, and further erred in concluding that a recalculation was required. This objection is OVERRULED. The ALJ specifically determined that "[t]he claimant meets the insured status requirements of the Social Security Act through December 31, 2007." (TR 32.) Further, while the Report appears to be somewhat inconsistent, the Court does not understand the Magistrate Judge to recommend that Plaintiff's last date insured be recalculated, nor does the Court believe that such redetermination is necessary on remand.[7] Plaintiff's date last insured is, and remains, December 31, 2007.

For the foregoing reasons, the Magistrate Judge's Report is ADOPTED, in part, the decision of the Commissioner is VACATED, and the case is REMANDED for further proceedings consistent with this Opinion and Order.

**IT IS SO ORDERED**.

Dated: August 3, 2011

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**

---

[7] The Magistrate specifically found that "there was no reason for the ALJ to reconfigure her last date insured to include earnings after 2006. SSA had already considered her earnings through 2007 in determining that her insured state expired on December 31, 2007." (Report at 20.) The Court believes that the confusion comes from the fact that the Magistrate Judge also noted that "Plaintiff advises that her date last insured was December 31, 2007. The ALJ erred in failing to take in account any earnings after 2006." (*Id*.) The Court believes that the Magistrate Judge intended to represent that *Plaintiff believes* that the ALJ erred in failing to take in account any earnings after 2006. In any event, the Court finds no error, and no recalculation should take place on remand.